UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) | Criminal Case No. 10-265-3 (RCL) |
| SAQUON BETHEA,<br>Defendant. | ) ) ) ) ) | |

## MEMORANDUM OF FINDINGS OF FACT AND STATEMENT OF REASONS IN SUPPORT OF ORDER OF PRETRIAL DETENTION

### I. INTRODUCTION

Saquon Bethea is charged by a two-count indictment with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846, and criminal forfeiture, in violation of 21 U.S.C. § 853 [3]. The conspiracy count charges that Mr. Bethea conspired with his co-defendants to violate 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(I), and §§ 841(a)(1), 841(b)(1)(A)(ii), and 841(b)(1)(A)(iii). If convicted of this conspiracy count, Mr. Bethea would be subject to a mandatory minimum term of incarceration of twenty years under the Controlled Substances Act.[1] 21 U.S.C. § 846; 21 U.S.C. § 841(b)(1)(A).

Upon consideration of the government's Memorandum for Pretrial Detention [7] and the oral representations of both parties at the January 24 detention hearing, Mr. Bethea was ordered

---

[1] Although the charged crime only carries a mandatory minimum term of incarceration of ten years, Mr. Bethea's prior conviction in 2002 in Maryland for conspiracy to distribute narcotics constitutes a "prior conviction for a felony drug offense," which raises his mandatory minimum term of incarceration to twenty years. 21 U.S.C. § 841(b)(1)(A).

1

held without bond pursuant to 18 U.S.C. § 3142(e). The findings of fact and statement of reasons in support of the Order of Detention are set forth below.

## II. LEGAL STANDARD

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, dictates that a defendant may be detained pending judicial proceedings where the government carries its burden of establishing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* at § 3142(e), (f). The government must first establish one of the predicates: (1) that, beyond a preponderance of the evidence, defendant poses a risk of flight, *United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996); or (2) that, by clear and convincing evidence, defendant has been shown to pose a risk to the safety of any person or the community, 18 U.S.C. § 3142(f); *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). The court must then determine that the same evidence leads to the conclusion that no condition or conditions of release will reasonably protect against the risk that has been found.

"In determining whether the release of the defendant would endanger the community," and reasonably assure the appearance of the defendant as required, "the court must consider any available information concerning" (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug"; (2) "the weight of the evidence against the person"; (3) "various personal information including character, employment, past conduct, and so on"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996) (internal quotations omitted) (citing 18 U.S.C. § 3142(g)).

There is a presumption that a defendant should be detained before trial if the court finds probable cause to believe that a defendant committed "an offense for which a maximum term of imprisonment is ten years or more [as] prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A). The court will "presume[] that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *Id.* § 3142(e)(3). A defendant may rebut this presumption if he offers "credible evidence" to the contrary. *Id.*; *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).

The court "may rely on a grand jury indictment to establish probable cause for the purposes of triggering the rebuttable presumption of section 3142(e)." *United States v. Williams*, 903 F.2d 844 (D.C. Cir. 1990).

### III. DISCUSSION

The grand jury's indictment, "fair upon its face," furnishes probable cause to believe that Mr. Bethea committed the acts that constitute this offense. *See Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975); *Williams*, 903 F.2d 844. This creates a presumption of pretrial detention.

The government's proffer is that Mr. Bethea was a member of a conspiracy to distribute crack and powder cocaine in the Washington, D.C. area. As part of this conspiracy, he bought narcotics from his co-defendant Curtis Houston, and he later redistributed them. The government's case against Mr. Bethea will consist of wiretap evidence. The government gives several representative examples of Mr. Bethea's involvement in this case. The government notes that these examples of interactions between Mr. Bethea and Curtis Houston—Mr. Bethea's primary narcotics supplier—are significant largely because they take place shortly after interactions between Mr. Houston and Tyrone Gloster—Mr. Houston's primary narcotics supplier. On July 31, 2009, Mr. Gloster re-supplied Mr. Houston with narcotics. On August 1,

Mr. Houston and Mr. Bethea exchanged several calls, in which they agreed to meet up the next day, and Mr. Houston told Mr. Bethea that he still had some drugs remaining. Two days later, calls indicate that Mr. Houston went to Mr. Bethea's house. On August 7, a call indicates that Mr. Gloster re-supplied Mr. Houston, and then calls between Mr. Houston and Mr. Bethea indicate that Mr. Bethea and Mr. Houston met at Mr. Houston's mother's house on August 8.

On September 17, 2009, calls indicate that Mr. Houston and Mr. Gloster met up with each other. Starting less than an hour after these calls, Mr. Bethea and Mr. Houston exchanged several calls in which they discussed Mr. Bethea purchasing narcotics from Mr. Houston. The government explained that in these calls, Mr. Bethea stated that he wanted to purchase crack cocaine rather than powder cocaine, because he did not know how to cook crack cocaine well, so he would not be able to make as much money from a purchase of powder cocaine.

On September 23, 2009, a call indicates that Mr. Houston and Mr. Gloster met up. The next day, Mr. Bethea told Mr. Houston that he wanted to get "two" from Mr. Houston, which agents understood to mean two ounces of narcotics.

On November 11, 2009, calls indicate that Mr. Houston and Mr. Gloster met up to re-supply Mr. Houston. On November 13, Mr. Houston and Mr. Bethea spoke on the phone and agreed to meet up. Mr. Houston was anxious to meet up with Mr. Bethea.

On November 17, 2009, Mr. Houston called Mr. Bethea to tell him he spoke with Mr. Gloster. On November 18, Mr. Houston told Mr. Bethea that he was meeting up with Mr. Gloster in an hour. Later that day, Mr. Houston told Mr. Bethea that he would be at Mr. Bethea's house in ten minutes. Less than ten minutes later, police officers stopped Mr. Houston and found one ounce of crack cocaine in his car.

Further, the government proffers that Mr. Bethea has been a fugitive in this case since October 12, 2010. The government proffers that Mr. Bethea has known that he was wanted in this case since October 6, 2010, and he has taken steps to avoid arrest since that point. As the government explained in its Motion for the Issuance of a Bench Warrant [17], on October 6, 2010, the government attempted to arrest all eight co-defendants, and successfully arrested every co-defendant except Mr. Bethea. On October 12, a defense attorney indicated to the U.S. Marshals Service that Mr. Bethea would turn himself in that afternoon to the custody of the U.S. Marshals Service, but Mr. Bethea failed to do so. Since October, the government spoke to Mr. Bethea's mother, father, sister, and two mothers of his children, telling them all to tell Mr. Bethea that he was wanted in this case. After October, Mr. Bethea stopped reporting to his probation officer in the case in which he was still on supervised release, and he stopped reporting for his mandatory weekly drug tests.

Finally, the government notes Mr. Bethea's prior convictions for contempt in the D.C. Superior Court in 2007—for which he is still on supervised release, driving under the influence in 2010, attempted possession of a controlled substance in 2007, conspiracy to distribute narcotics in Maryland in 2002, and possession of a handgun in Maryland in 2001.

In response, Mr. Bethea proffers that his mother and father live in the D.C. area. His father is a longtime employee of the National Institutes of Health, and his mother is employed by the National Science Foundation. Mr. Bethea has lived in the D.C. area his whole life, and he now lives with his parents. Mr. Bethea has three sisters and two children. Mr. Bethea also notes that the government has not proffered any physical evidence or physical surveillance implicating him, and that the phone calls do not on their face show that Mr. Bethea was involved in the conspiracy. Mr. Bethea also argues that even if Mr. Bethea were discussing drug transactions on

the phone with Mr. Houston, Mr. Bethea was only acting as a customer and buying the drugs for his personal use; he was not acting as part of a conspiracy. The fact that Mr. Bethea tested positive for drugs while on supervision shows that Mr. Bethea wanted to purchase drugs for his own use. Finally, Mr. Bethea argues that he is not a fugitive: if he were a fugitive, he would have fled the jurisdiction, which he did not do.

In response to Mr. Bethea's proffer, the government noted that Mr. Bethea was arrested somewhere other than his parents' house, and the government believes he was staying somewhere other than at his parents' house.

## IV. FINDINGS OF FACT

Upon consideration of the factors enumerated at § 3142(g) of the Bail Reform Act, the Court finds by clear and convincing evidence that Mr. Bethea has been shown to pose a risk to the safety of the community, and that no condition or conditions of release would reasonably protect against that risk. Upon consideration of the same factors, the Court finds by a preponderance of the evidence that Mr. Bethea has been shown to pose a risk of flight, and that no condition or conditions of release would reasonably assure his appearance as required. First, the Court finds that the nature and circumstances of the offenses clearly indicate that Mr. Bethea participated in a conspiracy an offense involving the distribution of large amounts of narcotics in the D.C. area. Second, the Court finds that the weight of the evidence against Mr. Bethea is compelling. Specifically, the government has proffered that wiretaps demonstrate Mr. Bethea's role in this conspiracy, and the government noted specific incriminating examples of the evidence that it has against Mr. Bethea. Notably, the conversations Mr. Bethea's phone conversations with his supplier—Mr. Houston—take place after Mr. Houston was re-supplied by his own supplier—Mr. Gloster. Third, the Court finds that Mr. Bethea's personal information

weighs in favor of detention. Although Mr. Bethea showed evidence of his family ties, the Court must weigh this against the government's evidence of Mr. Bethea's past narcotics conviction, conduct in this case, and the fact that he was on supervision in another case when he participated in the acts proffered by the government. Fourth, the Court finds that Mr. Bethea's release would pose a serious danger to the community. The purchase and sale of narcotics is an inherently dangerous activity, and Mr. Bethea poses a danger to the community through his cocaine and crack cocaine distribution. Further, Mr. Bethea's fugitive status demonstrates to the Court that pretrial detention is the only way to reasonably assure Mr. Bethea's appearance in this case.

## V. CONCLUSION

On the basis of the foregoing findings of fact and reasons, Mr. Bethea will be held without bond pursuant to the January 24 Order of Detention.

_____      1/25/11
ROYCE C. LAMBERTH            Date
Chief Judge
United States District Court